**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **THOMAS GABRIEL,** | |
| **Plaintiff,** | |
| | **CIVIL ACTION NO. 4:23-cv-02574** |
| **v.** | |
| **ICON BURGER ACQUISITION LLC,** | |
| | **Jury Trial Demanded** |
| **Defendant.** | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR REDUCTION**
**OF THE JURY'S DAMAGES AWARDS FOR PAST INCONVENIENCE**
**AND MENTAL ANGUISH AND BACK PAY**
_____

Plaintiff files this response for reduction of the jury's damages awards for past inconvenience and mental anguish and back pay.

**I.      ARGUMENT AND AUTHORITIES**

**A.  Gabriel does not oppose the $300,000 Statutory Cap**.

The statutory damages cap for compensatory damages for nonpecuniary losses may not exceed $300,000. Tex. Lab. Code Sec. 21.2585(d)(4). Gabriel does not oppose Defendant's request to reduce the jury's award for past inconvenience and mental anguish to the statutory cap.

**B.  The Jury's Award of $400,000 for Back Pay and Benefits Should Not Be Reduced.**

**1.  The Jury Reasonably Calculated Back Pay Based on Gabriel's Vice President Compensation Because the Demotion Was Part of the Discriminatory Termination Scheme.**

Smashburger's termination of Gabriel from the Vice President position is the adverse action in this case, and the demotion was merely part of how the termination from the Vice President position was accomplished, as Gabriel argued and proved to the jury. The evidence presented at trial supports a single, cohesive course of discriminatory and retaliatory conduct that began when Gabriel complained of age discrimination while serving as Vice President, continued through a demotion and salary reduction designed to make him terminable, and culminated in the reduction-in-force termination that removed him from Smashburger altogether. Defendant's attempt to sever these events into isolated and arguably lawful acts is

1

inconsistent with the record the jury heard, and it would allow an employer to profit from the very discriminatory acts that caused the wage loss in the first place.

The jury heard and was entitled to credit evidence demonstrating why Gabriel's earnings following the demotion and pay cut cannot be treated as the starting point for calculating back pay. Bianco wanted to terminate Gabriel, who was the Vice President over the West Region. But he did not have a viable reason to terminate Gabriel. The jury heard that Gabriel's numbers exceeded those of the East Region. The jury also heard that Bianco had given Plaintiff a positive year-end review and a raise just 6 months before. Those facts matter because they show why a straightforward termination for performance reasons was not available to Bianco. Further, a recommendation to eliminate the Vice President–West Region role in a reduction-in-force would not have been plausible or successful. In other words, the jury could reasonably conclude that, if Bianco's objective was to remove Gabriel from the company, he needed a mechanism that would allow him to accomplish that objective while attempting to maintain a facade of business justification.

That mechanism, as Plaintiff argued and proved, was the demotion. Bianco could not plausibly or successfully recommend eliminating the position of Vice President–West Region in a reduction-in-force. Therefore, in order to terminate Gabriel from Smashburger, Bianco first had to demote Plaintiff to the position of Senior Director of Operations, in order to then be able to recommend Plaintiff's position for reduction-in-force. Bianco then recommended the position for reduction in force after he had just moved Gabriel into the position. This timeline makes sense only as a single scheme to terminate Gabriel's employment. There is no other reason why a reduction-in-force would conveniently target the very position to which Gabriel had just been reassigned. The demotion was merely the mechanism by which Gabriel's termination was accomplished.

The testimony the jury heard about what happened on November 18, 2022, further supports that Bianco acted on that day in furtherance of terminating Gabriel from the Vice President position, not merely demoting him. The jury heard that Gabriel was told to choose between demotion and accepting a severance on November 18, 2022. This "choice" itself is evidence of Bianco's objective to remove Gabriel from the

organization, because it was designed to pressure Gabriel to exit the organization through taking a severance, as the only alternative to a demotion that stripped him of status and pay. The jury also heard that during the meeting on November 18, 2022, in which Gabriel was informed of the "choice" between accepting a severance and being demoted, and before Gabriel had a chance to respond, his company computer access was due to Bianco's evident intent to terminate Gabriel's employment as quickly as possible.

The evidence, therefore, showed that Bianco had a single objective from the moment Gabriel, as Vice President, complained of age discrimination and Bianco learned of it in August or September 2022: to terminate Gabriel's employment with Smashburger. The jury heard evidence that it was as Vice President that Gabriel complained of age discrimination, and that it was Bianco's response to that complaint, once he learned of it in August or September 2022, that set in motion Bianco's plan to remove him. The demotion was merely the means by which Bianco accomplished his goal of terminating Gabriel.

Defendant's argument that back pay must be calculated using Gabriel's reduced salary at the time of discharge, therefore, ignores the facts of this case. The jury did not hear a story in which a lawful demotion occurred, followed by an unrelated later termination from the demoted role. The jury heard substantial evidence that Gabriel was a successful Vice President of Operations; that Gabriel raised concerns about age discrimination while he was in the Vice President position; and then, as Bianco had no option to terminate Gabriel directly from the Vice President position, Bianco had to first demote Gabriel to a position that he immediately thereafter claimed to need to eliminate. Under this sequence, the logical and necessary measure of damages as a result of the termination must take into account Gabriel's earnings from the Vice President position, because that was the position from which Bianco sought to terminate and succeeded in terminating Gabriel.

Accordingly, allowing the Defendant to use the reduced salary amount as the back pay baseline would fail to fully compensate Gabriel for the injury he suffered. Back pay is intended to make the plaintiff whole. The make-whole principle requires restoration of the compensation the employee would have earned absent the discrimination. "Back pay liability in a wrongful termination case commences from the time the

discriminatory conduct causes economic injury and ends upon the date of the judgment." *Palasota v. Haggar Clothing Co.*, 499 F. 3d 474, 483 (5th Cir. 2007), *citing Shore v. Fed. Express Corp.,* 777 F.2d 1155, 1158 (6th Cir. 1985); Nord v. U.S. Steel Corp., 758 F.2d 1462, 1473 (11th Cir. 1985).

The evidence supports that, absent age discrimination and retaliation, Gabriel would have remained in his Vice President role at his $174,800 salary, with target bonus potential of $69,920, and additional payments and benefits. [Plaintiff's Exhibit 41]. That compensation structure is the relevant one for damages calculation, because it reflects the position Gabriel occupied and from which he was unlawfully removed through Bianco's actions to terminate him.

The jury's finding, awarding Gabriel damages for the difference between his earnings as Vice President and his actual earnings, is therefore supported by the evidence that it was as Vice President that Gabriel complained of age discrimination and that Bianco acted to terminate Gabriel from the Vice President position. Accordingly, back pay should be calculated according to the same metric.

   2. **The Jury's $400,000 Award Is Supported by the Evidence and Within the Range Permitted by the Record.**

Defendant alternatively argues the award exceeds Gabriel's own testimony of approximately $360,000. But Gabriel's testimony was not a ceiling; it was one estimate based on certain assumptions. The jury heard broader evidence regarding compensation, bonus opportunity, and mitigation earnings and was free to weigh that evidence. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150-151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A jury enjoys substantial discretion in awarding damages within the range shown by the evidence." *Neiman–Marcus Group v. Dworkin,* 919 F.2d 368 (5th Cir.1990). The Vice President's compensation differential over the relevant period, including bonus potential and benefits, supports an award in the range returned by the jury.

Defendant's argument that benefits were comparable or that bonus attainment was uncertain goes to weight, not admissibility. The jury heard the competing evidence, including Defendant's assertion that

Gabriel might not have earned full bonuses, and nevertheless awarded $400,000. That determination is entitled to deference absent a showing that it is wholly unsupported or excessive as a matter of law. Defendant has not made that showing.

## II. CONCLUSION

The evidence supports the jury's determination that Gabriel's economic loss must be measured from his Vice President compensation because the demotion was part of the discriminatory termination scheme. Defendant's request to recalculate damages from the reduced salary would improperly allow it to benefit from its own unlawful conduct and would under-compensate Gabriel. The motion to reduce the back-pay award should be denied.  Gabriel should receive the jury's $400,000 back pay award.

Respectfully submitted,

**SHELLIST | LAZARZ | SLOBIN LLP**

*/s/ Todd Slobin*
Todd Slobin
State Bar No. 24002953
tslobin@eeoc.net
Dorian Vandenberg-Rodes
State Bar No. 24088573
drodes@eeoc.net
5373 West Alabama, Suite 600
Houston, Texas 77056
(713) 621-2277 (Tel)
(713) 621-0993 (Fax)

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record via ECF on February 25, 2026.

*/s/ Todd Slobin*
Todd Slobin